UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                                :
JOHN WHITFIELD,
                                                :    No. 09 Civ. 1925 (WHP)
              Plaintiff,
                                                :
       -against-                                     MEMORANDUM & ORDER
                                                :
DR. DAVID O'CONNELL, et al.,
                                                :
              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/18/2010
```

WILLIAM H. PAULEY III, District Judge:

       Plaintiff pro se John Whitfield ("Whitfield") brings this federal civil rights action

against the New York State Department of Correctional Services ("DOCS"), various named and

unnamed DOCS officials and medical professionals at six New York State prisons in their

individual and official capacities, Bio-Reference Laboratories s/h/a Medilabs Laboratory ("Bio-

Reference"), Robert L. Rush, Ph.D. ("Dr. Rush"), and unnamed Bio-Reference technologists.

Defendants Dr. N. Muthra ("Dr. Muthra"), Dr. Khee Tint Maw ("Dr. Maw"), Philip Williams

("Williams"), Brian Fischer ("Fischer"),[1] and DOCS (collectively the "State Defendants") move

to dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules

of Civil Procedure.  Defendants Dr. Rush and Bio-Reference (collectively the "Bio-Reference

Defendants") move to dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6)

---

[1] Numerous other individual State Defendants named and unnamed in the Amended Complaint
have not been served.  Those named Defendants are: DOCS Inmate Grievance Program Director
Thomas G. Eagen, Drs. David O'Connell, J. Perilli, Lester Wright, Jerome Fein, "Everett,"
Gerald Ginsberg, Heidi L. Fine, M.A. Halko, Andrew Shapiro, and F. Lancellotti; and Registered
Nurses Philip Erickson, Michael Michener, Colleen Bennett, Margaret Coloni, Ruth Gilligan,
James McMahon, Robert Magee, Cathie Turta-Yohe, Carol Kunes, Baib Koziarski, Leacy
Miller, D. Rick, Mana Jones, Joyce Gutowski, Suzette Cainper, Elizabeth Hamawy, Roberta
Jahn-Sissoko, and Valerie Jane Monroe.

and, in the alternative, they move for summary judgment.  For the following reasons, the State

Defendants' and the Bio-Reference Defendants' motions to dismiss the Amended Complaint are

granted.

## BACKGROUND

For purposes of these motions, this Court accepts the following allegations of the

Amended Complaint as true.[2]  Whitfield has been in DOCS custody since June 1988.  At that

time, he entered Downstate Correctional Facility ("Downstate") and has been housed over the

last twenty years in at least six DOCS facilities around New York State.  (Amended Verified

Complaint dated Sept. 27, 2009 ("Compl.") ¶ 59.)

Whitfield has complained to DOCS medical staff about lower back, kidney, chest

and lung pain for years.  (Compl. ¶¶ 58, 94, 101.)  He asserts DOCS employees omitted many of

his complaints from his Ambulatory Health Records.  (Compl. ¶ 97.)  On November 6, 2000,

Whitfield received treatment for bacterial pneumonia from Williams, a physician's assistant at

Sing Sing Correctional Facility ("Sing Sing").  (Compl. ¶¶ 6, 74.)  Whitfield alleges that

although he experienced a severe allergic reaction to the prescribed antibiotic, Williams forced

him to continue taking the medication and refused to prescribe another.  (Compl. ¶ 100.)

On October 5, 2004, Whitfield filed grievance # SS-39628-04 (the "Chest Pain

Grievance") at Sing Sing with the Inmate Grievance Resolution Committee (the "IGRC")

complaining that the Medical Department's treatment of his ongoing chest pain was inadequate

---

[2] In his Complaint, Whitfield references grievances # SS-39628-04, # WB-14349-08 and # WB-14427-08, and five laboratory reports dated June 2, 1988, September 23, 1993, March 22, 1995, August 30, 2001, and July 29, 2006. These documents, which Whitfield submitted with his opposition papers, are incorporated by reference and properly considered on a motion to dismiss. See, e.g., Sanchez v. Velez, No. 08 Civ. 1519 (NRB), 2009 WL 2252319, at *1 & n.1 (S.D.N.Y. July 24, 2009) (considering pro se plaintiff's grievances referenced in the complaint on motion to dismiss).

and requesting to see an outside physician. (Compl. ¶ 54; Plaintiff's Affidavit in Support of

Opposition to Defendants' Motion to Dismiss and Motion for Summary Judgment dated Aug. 4,

2009 ("Pl. Aff.") Ex. A: Inmate Grievance Complaint dated Oct. 5, 2004.) On November 3,

2004, Fischer, the Superintendent of Sing Sing, denied Whitfield's appeal from the IGRC's

adverse decision. (Compl. ¶¶ 8, 78; Pl. Aff. Ex. A: Superintendent decision on appeal dated

Nov. 3, 2004.) Whitfield then appealed to the Central Office Review Committee (the "CORC"),

which denied his grievance on December 1, 2004. (Compl. ¶ 54.)

   In June 2008, Whitfield was transferred from Sing Sing to Woodbourne

Correctional Facility ("Woodbourne"). (Compl. ¶¶ 1, 55.) On arrival, Whitfield received a

series of medical examinations, including blood and urine tests. (Compl. ¶ 55.) On July 28,

2008, Woodbourne medical staff informed Whitfield that he had a urinary tract infection and

prescribed a seven-day antibiotic regimen. (Compl. ¶ 55.) Whitfield alleges that while taking

the prescribed antibiotic, his "long-standing chest and lung pain flared up substantially."

(Compl. ¶ 56.) When the pain persisted after completing the antibiotic treatment, he attended

sick call and asked to see a doctor. (Compl. ¶ 56.)

   On August 13, 2008 Whitfield received copies of his DOCS medical records that

he had requested. (Compl. ¶ 56.) Whitfield claims they showed that "as far back as March 1995

there was clear documentary evidence of bacteria in his urine." (Compl. ¶ 56.) Specifically, a

laboratory report from Attica Correctional Facility ("Attica") dated March 22, 1995 indicated a

"few" bacteria in his urine (Pl. Aff. Ex. B: Laboratory report dated Mar. 22, 1995 ("Attica Lab

Report")), yet according to Whitfield he did not receive antibiotics for that condition at Attica

(Compl. ¶ 56). Further, two laboratory reports from Sing Sing dated August 30, 2001 and July

29, 2006 recorded "moderate" bacteria in his urine and abnormal hematology results such as low

white blood cell and platelet counts. (Compl. ¶ 57; Pl. Aff. Ex. B: Laboratory reports dated Aug. 30, 2001 and July 29, 2006 ("Sing Sing Lab Reports").) The Sing Sing Lab Reports were ordered by Drs. Muthra and Maw, physicians in Sing Sing's Medical Department. (Compl. ¶¶ 4-5, 73; Sing Sing Lab Reports.)

The Attica Lab Report and the Sing Sing Lab Reports were issued by Bio-Reference, an independent laboratory that performed the testing of samples sent by requesting DOCS physicians who treated Whitfield. (Compl. ¶ 10.) Dr. Rush is, and was at all relevant times, the Director of Bio-Reference. (Compl. ¶ 11.) Whitfield alleges that Bio-Reference did not identify the specific bacteria found in his urine or conduct antibiotic sensitivity tests after urinalyses showed the presence of bacteria on March 22, 1995, August 20, 2001, and July 29, 2006. (Compl. ¶¶ 79-80.) He further claims that the Bio-Reference Defendants instituted a policy discouraging Bio-Reference employees from using costly techniques like bacteria identification and sensitivity tests on inmate samples. (Compl. ¶ 81.)

On August 18, 2008, Whitfield met with Dr. F. Lancellotti ("Dr. Lancellotti"), a physician in the Woodbourne Medical Department, to inquire about his abnormal test results. (Compl. ¶¶ 39, 58.) Dr. Lancellotti conducted additional blood and urine tests to confirm the antibiotic treatment removed all bacteria, as well as an x-ray and an EKG. (Compl. ¶ 58.) Whitfield alleges that despite his requests, Dr. Lancellotti refused to conduct other tests to determine whether the bacterial infection damaged any organs. (Compl. ¶ 58.) Whitfield was subsequently informed that the blood and urine tests were negative for the presence of bacteria. (Compl. ¶ 58.)

Whitfield then ordered a copy of his entire DOCS medical file. (Compl. ¶ 59.) In reviewing that file on September 8, 2008, Whitfield learned that the first urinalysis conducted

4

when he entered DOCS custody at Downstate in June 1988 indicated the presence of bacteria in his urine. (Compl. ¶ 59; Pl. Aff. Ex. B: Laboratory report dated June 2, 1988 ("Downstate Lab Report").) He also discovered a laboratory report from Attica dated September 23, 1993 reporting a "marked decrease" in platelet count. Whitfield claims that report "confirm[ed] the presence of a spreading bacterial infection." (Compl. ¶ 73; Affidavit of John Whitfield dated Nov. 5, 2009 Ex. B: Laboratory report dated Sept. 23, 1993 ("Attica Lab Report").) Both lab reports were issued by Bio-Reference. On September 12, 2008, Whitfield again met with Dr. Lancellotti and requested to see a specialist. (Compl. ¶ 60.) Dr. Lancellotti denied Whitfield's request for an ultrasound or an MRI of his kidneys but ordered an x-ray. (Compl. ¶ 60.)

Whitfield alleges that Defendants "[a]t all times relevant . . . acted pursuant to the policies . . . promulgated by [DOCS]." (Compl. ¶ 47.) Based on the laboratory reports in his medical file and Defendants' inactions, Whitfield claims that Defendants "entered into an agreement to ignore [his] urinary tract infection" of twenty years duration "to bring about his death." (Compl. ¶¶ 91-94.) Whitfield also claims that in furtherance of the conspiracy, employees at the Greenhaven Correctional Facility ("Greenhaven") removed laboratory reports from his file in October 1991 and January 1993, and that Dr. Heidi L. Fine destroyed an x-ray taken November 6, 2000. (Compl. ¶¶ 59, 95, 99.) He further alleges that Defendants' actions prevented him from discovering his true medical condition until July 28, 2008. (Compl. ¶ 106.)

On September 13, 2008, Whitfield filed grievance # WB-14349-08 (the "Infection Grievance") at Woodbourne requesting treatment "by an outside physician" and the removal of "the doctors who ignored [his] urinary tract infection." (Compl. ¶ 61; Pl. Aff. Ex. D: Inmate Grievance Complaint dated Sept. 13, 2008.) Dr. Lancellotti responded on September 25, 2008 by stating that "there was nothing currently wrong with [Whitfield's] health." (Compl. ¶ 123.)

5

The CORC denied Whitfield's grievance on appeal on November 19, 2008. (Compl. ¶ 54; Pl. Aff. Ex. D: CORC Grievance Decision dated Nov. 19, 2008.)

On November 17, 2008, Dr. Lancellotti performed a laser surgical removal of a wart on Whitfield's tricep. (Compl. ¶ 63.) Whitfield alleges that Dr. Lancellotti treated him roughly during the procedure, left a deep gash and portions of the wart behind, and failed to prescribe pain killers. (Compl. ¶ 63.) Whitfield filed grievance # WB-14427-08 (the "Retaliation Grievance") on November 26, 2008 alleging Dr. Lancellotti acted in retaliation for the Infection Grievance. (Compl. ¶¶ 63, 125.) The CORC denied the Retaliation Grievance on January 28, 2009. (Compl. ¶ 54.)

## DISCUSSION

### I. Legal Standard

"A court faced with a motion to dismiss pursuant to both Rule 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." Magee v. Nassau Cty. Med. Ctr., 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998). When considering a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court accepts the material facts alleged in the complaint as true and draws all reasonable inferences in the plaintiff's favor. Jaghory v. N.Y. State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997).

Nonetheless, "factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007) (requiring plaintiff to plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [his claim]"). "To survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). A court's "consideration [on a motion to dismiss] is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).

A pro se litigant's submissions are held to "less stringent standards than [those] drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Courts must "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions 'to raise the strongest arguments they suggest.'" Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). "These liberal pleading rules apply with particular stringency to complaints of civil rights violations." Phillip v. Univ. of Rochester, 316 F.2d 291, 293-94 (2d Cir. 2003). Nevertheless, the court need not accept as true "conclusions of law or unwarranted deductions of fact." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994) (citations omitted).

II. Eleventh Amendment and Sovereign Immunity

"Neither a state nor one of its agencies nor an official of that agency sued in his or her official capacity is a 'person' under § 1983." Spencer v. Doe, 139 F.3d 107, 111 (2d Cir. 1998); see also Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). "Therefore, state officials cannot be sued in their official capacities for retrospective relief under section 1983." Huminski v. Corsones, 386 F.3d 116, 133 (2d Cir. 2004) (citing Will, 491 U.S. at 71). Moreover, because Section 1983 does not abrogate a state's sovereign immunity, Quern v.

7

Jordan, 440 U.S. 332, 341, 345 (1979), and the State of New York has not waived its immunity, claims against DOCS for both monetary and injunctive relief are barred under the Eleventh Amendment. Santiago v. N.Y. State Dep't of Corr. Servs., 945 F.2d 25, 31-32 (2d Cir. 1991). Accordingly, Whitfield's § 1983 claims against the individual State Defendants in their official capacities and against DOCS for monetary and injunctive relief are dismissed.

III. Statute of Limitations: Defendants Williams & Fischer

A. In General

"In section 1983 actions, the applicable limitations period is found in the 'general or residual [state] statute [of limitations] for personal injury actions.'" Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002) (quoting Owens v. Okure, 488 U.S. 235, 249-50 (1989)) (alterations in original). In New York, the applicable statute of limitations is three years. N.Y. C.P.L.R. § 214(5); see also Pearl, 296 F.3d at 79. "For statute of limitations purposes, a pro se prisoner's complaint is deemed filed on the date that the prisoner turn[s] his complaint over to prison officials for transmittal to the court, not when the court actually receives it." Abbas v. Dixon, 480 F.3d 636, 638 & n.1 (2d Cir. 2007) (internal quotation marks omitted). Because Whitfield delivered his original complaint to Woodbourne prison authorities on September 23, 2008, his only actionable claims are those that accrued on or after September 23, 2005.

"Federal law determines when a section 1983 cause of action accrues . . . [which occurs] . . . when the plaintiff knows or has reason to know of the injury which is the basis of his action." Pearl, 296 F.3d at 80 (internal quotation and citations omitted). "The cause of action accrues even though the full extent of the injury is not then known or predictable." Wallace v. Kato, 549 U.S. 384, 391 (2007). Likewise, "[d]elay in discovering the cause of the injury does

8

not prevent the claim from accruing" because it is "'discovery of the injury, not discovery of the other elements of the claim, [that] starts the clock.'" Gonzalez v. Wright, 665 F. Supp. 2d 334, 348-49 (S.D.N.Y. 2009) (quoting Rotella v. Wood, 528 U.S. 549, 555 (2000)). Moreover, "[t]he existence of a conspiracy does not postpone the accrual of causes of action arising out of the conspirators' separate wrongs." Pinaud v. Cty. of Suffolk, 52 F.3d 1139, 1156 (2d Cir. 1995).

Whitfield alleges that Williams deliberately refused to treat his underlying urinary tract infection or prescribe an alternative antibiotic when treating his bacterial pneumonia on November 6, 2000. Whitfield claims Fischer denied his Chest Pain Grievance on November 3, 2004. Even if Whitfield could not have discovered the cause of his alleged injuries or the existence of the alleged conspiracy until July 28, 2008, his claims against Williams and Fischer both accrued well before September 23, 2005.

B. Tolling: Continuing Violation and Fraudulent Concealment

"To assert a continuing violation for statute of limitations purposes," the plaintiff must allege (1) "an ongoing policy of deliberate indifference to his or her serious medical needs"; and (2) for each defendant, "some acts in furtherance of the policy within the relevant statute of limitations period." Shomo v. City of N.Y., 579 F.3d 176, 179, 182-84 (2d Cir. 2009). To rely on the fraudulent concealment doctrine, a plaintiff must make non-conclusory allegations of "a conspiracy or other fraudulent wrong which precluded his possible discovery of the harms that he suffered." Pinaud, 52 F.3d at 1157; see also Shomo, 579 F.3d at 85 (plaintiff must allege "it would have been impossible for a reasonably prudent person to learn about his or her cause of action" (emphasis in original)).

Whitfield does not claim that Williams or Fischer participated in his treatment during the three years preceding the filing of this lawsuit. As for fraudulent concealment, the

allegations in the Amended Complaint acknowledge the possibility that Whitfield could have discovered his chronic urinary tract infection before July 28, 2008. First, Whitfield complained about his health problems as far back as 2004. (Compl ¶ 54.) Moreover, when he requested access to his medical records, he received them promptly. (See Compl ¶¶ 56, 59.) Whitfield does not claim that any Defendant refused him access to his medical file at any time. Accordingly, the claims against Williams and Fischer are time-barred and dismissed.

## IV. Failure to State a Claim[3]

### A. Deliberate Indifference to Serious Medical Needs

To state a claim of inadequate medical treatment in violation of the Eighth Amendment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). The Eighth Amendment standard includes objective and subjective criteria: (1) "the deprivation alleged must be, objectively, sufficiently serious"; and (2) "a prison official must have a sufficiently culpable state of mind[:] deliberate indifference to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994).

Under the objective element, an inmate must allege his medical needs were "sufficiently serious," a standard that "contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (internal quotations and citations omitted). However, a prisoner is not required to allege

---

[3] Although Defendants also move to dismiss on the ground that Whitfield failed to exhaust his administrative remedies, "the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies" where "a claim . . . [inter alia] . . . fails to state a claim upon which relief can be granted." 42 U.S.C. § 1997e(c)(2); see also McCoy v. Goord, 255 F. Supp. 2d 233, 252 (S.D.N.Y. 2003).

that he "experiences pain that is at the limit of human ability to bear, nor [must he allege] that [his] condition will degenerate into a life-threatening one." Brock v. Wright, 315 F.3d 158, 163 (2d Cir. 2003).

   The subjective element requires the prisoner to allege "something more than mere negligence" yet "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835; Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996). The defendant prison official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." Farmer, 511 U.S. at 837. "[M]ere medical malpractice is not tantamount to deliberate indifference," unless "the malpractice involves culpable recklessness, i.e., . . . a conscious disregard of a substantial risk of serious harm." Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998) (quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996)). "Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation." Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003).

   1. Urinary Tract Infection

   The gravamen of the Amended Complaint is that numerous named and unnamed medical personnel at six different prison facilities and at Bio-Reference ignored the five laboratory reports indicating the presence of bacteria in his urine and therefore failed to diagnose or treat his alleged urinary tract infection.[4] This Court need not decide whether Whitfield's

---

[4] A district court has the power to sua sponte dismiss claims against nonmoving defendants for failure to state a claim, as long as the plaintiff has been given an opportunity to be heard. See Thomas v. Scully, 943 F.2d 259, 260 (2d Cir. 1991). In this case, Whitfield has been heard both

alleged chronic urinary tract infection constituted a serious medical need because the acts and omissions Whitfield alleges fail to rise to the level of deliberate indifference.

"[A]lthough the provision of medical care by prison officials is not discretionary, the type and amount of medical treatment is discretionary." Perez v. Hawk, 302 F. Supp. 2d 9, 21 (E.D.N.Y. 2004). "[D]isagreements over medications, diagnostic techniques . . . , forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim. These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001); see also Estelle, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.").

Whitfield's claims that Drs. O'Connell, Muthra and Maw—who each ordered a single laboratory report—ignored the presence of bacteria in his urine and failed to treat his alleged urinary tract infection are at most "isolated omission[s] to act" which do "not support a claim under section 1983 absent special circumstances indicating an evil intent, recklessness, or at least deliberate indifference . . ." Ayers v. Coughlin, 780 F.2d 205, 209 (2d Cir. 1985) (per curiam). Even if, as Whitfield alleges, basic medical procedure required these Defendants to "take appropriate additional steps" to determine the nature of the bacteria found, this is at most negligence, not deliberate indifference. See Chance, 143 F.3d at 703.

Whitfield further alleges that Drs. Fein, Everett, Ginsberg, Fine and Halko, and no fewer than eighteen registered nurses ignored the laboratory reports when treating him between January 1990 and July 2008. Whitfield does not allege at what point in that mostly time-barred

in his Amended Complaint—which this Court in its discretion permitted him to file after the motions under consideration were filed—and in his papers in opposition to those motions.

eighteen-year period he was examined or treated by any of these Defendants, under what circumstances, or for what medical conditions. Because Whitfield does not "identif[y] the particular events giving rise to [his] claim[s]" against these Defendants, his Amended Complaint fails to give them "fair notice of what the claim is and the grounds upon which it rests." Boykin v. KeyCorp., 521 F.3d 202, 214-15 (2d Cir. 2008).

Whitfield's claims against Dr. Lancellotti concerning treatment for his urinary tract infection also fail as "mere disagreement[s] over [] proper treatment [which] do[] not create a constitutional claim." Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998); see also Joyner v. Greiner, 195 F. Supp. 2d 500, 505 (S.D.N.Y. 2002) (physician's refusal to order an MRI not actionable under the Eighth Amendment). "So long as the treatment given is adequate," as Dr. Lancellotti's was here, "the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." Chance, 143 F.3d at 703.

Finally, Whitfield fails to state a claim against the Bio-Reference Defendants. A laboratory's choice not to perform bacteria identification and antibiotic sensitivity tests on blood and urine samples are medical judgments of the kind that cannot give rise to a constitutional claim. See Estelle, 429 U.S. at 107.

Accordingly, this Court grants Defendants' motions to dismiss Whitfield's deliberate indifference to serious medical needs claims arising from the treatment of his urinary tract infection.

### 2. Wart Removal

Whitfield alleges that Dr. Lancellotti inadequately performed a laser surgical removal of a wart and refused to prescribe pain killers during post-operative recovery. Warts do not constitute a serious medical need under the Eighth Amendment. See Page v. Scott, No. 07

Civ. 287 (BES) (VPC), 2009 WL 604922, at *6 (D. Nev. Feb. 17, 2009) (plantar warts are not a serious medical need). Moreover, the allegedly hostile and incomplete performance of a laser surgical wart removal and refusal to prescribe pain medication thereafter does not constitute deliberate indifference. See White v. Corrs. Med. Servs., No. 06 Civ. 680 (SNL), 2006 WL 1391298, at *2 (E.D. Mo. May 19, 2006) (prisoner's allegations of "failure to remove [his] warts entirely" and resulting pain "may be cognizable as a negligence or medical malpractice claim under state law, [but] they are insufficient to sustain a constitutional violation"). Not surprisingly, this Court could not find any decisions by courts in the Second Circuit concerning deliberate indifference claims as applied to non-venereal warts. Accordingly, this Court dismisses Whitfield's deliberate indifference to serious medical needs claim concerning the wart removal with prejudice pursuant to Rule 12(b)(6).

B. Conspiracy

To state a claim for "a § 1983 conspiracy, a plaintiff must [allege]: (1) an agreement between two or more state actors . . . (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).[5] Because "Section 1983 is only a grant of a right of action[,] the substantive right giving rise to the action must come from another source." Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995). Therefore, a § 1983 conspiracy claim "will stand only insofar as the plaintiff can prove the sine qua non of a § 1983 action: the violation of a federal right." Singer, 63 F.3d at 119 (citing Adickes v. S.H. Kress & Co., 398

---

[5] "[A] § 1985(3) claim generally describes a conspiracy of two or more persons for the purpose of depriving of another of equal protection of the laws or equal privileges and immunities under the laws." Dixon v. City of Lawton, Okla., 898 F.2d 1443, 1447 (10th Cir. 1990). However, "§ 1985(3) requires proof that a conspirator's action was motivated by a class-based, invidiously discriminatory animus; there is no such requirement under § 1983." Dixon, 898 F.2d at 1447 (citing Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)).

U.S. 144, 150 (1970) (one of the necessary elements of a § 1983 action is "that the defendant has deprived [the plaintiff] of a right secured by the 'Constitution and laws' of the United States")). Since Whitfield's deliberate indifference to serious medical needs claims fail, his claim of a conspiracy also falls.

### C. Retaliation

"[T]o survive a motion to dismiss a complaint, a plaintiff asserting First Amendment retaliation claims must allege (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003) (internal quotation marks and citation omitted). It is well established that the filing of prison grievances is constitutionally protected conduct. See Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996) ("retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments"). Nonetheless, "[c]ourts properly approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." Davis, 320 F.3d at 352; see also Williams v. Fisher, No. 02 Civ. 4558 (LMM), 2003 WL 22170610, at *10 (S.D.N.Y. Sept. 18, 2003) ("because of the ease of fabricating a claim of retaliation, the Second Circuit requires the court to handle such claims with care").

"[I]n the prison context [the Second Circuit has] defined 'adverse action' objectively, as retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising constitutional rights.'" Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir.

15

2004) (emphasis in original and citation omitted). In considering a prisoner retaliation claim, courts must bear in mind that "prisoners may be required to tolerate more . . . than average citizens, before a [retaliatory] action taken against them is considered adverse." Davis, 320 F.3d at 353 (internal quotation marks omitted); Young v. Strack, No. 05 Civ. 9764 (WHP), 2007 WL 1575256, at *7 (S.D.N.Y. May 29, 2007).

Although courts in this district have recognized that a prison physician's retaliatory treatment may well constitute "adverse action," these cases involve the revocation of "necessary medical rehabilitative treatment," Williams, 2003 WL 22170610, at *11, or the denial of medical treatment for injuries later requiring surgery, Burton v. Lynch, --- F. Supp. 2d ---, No. 08 Civ. 8791 (LBS), 2009 WL 3286020, at *9, 11 (S.D.N.Y. Oct. 13, 2009). That Dr. Lancellotti may have performed a laser wart removal without the most pleasant of bedside manners, or that he may have left part of the wart behind and declined to prescribe pain killers falls far short of "adverse action" which would chill the speech of a similarly situated individual of ordinary firmness. Dr. Lancellotti's alleged actions are "simply de minimis and therefore outside the ambit of constitutional protection." Davis, 320 F.3d at 353. Accordingly, this Court dismisses Whitfield's retaliation claim concerning Dr. Lancellotti's laser removal of a wart from Plaintiff's arm.

## V.  State Law Claims

Having dismissed all of Whitfield's federal claims, this Court declines to exercise supplemental jurisdiction over his pendant state law claims. See 28 U.S.C. § 1367; Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

16

CONCLUSION

For the foregoing reasons, the State Defendants' and the Bio-Reference

Defendants' motions to dismiss the Amended Complaint are granted.  The Clerk of the Court

shall terminate all pending motions and mark this case as closed.

Dated:     March 18, 2010
           New York, New York

                                         SO ORDERED:


                                         WILLIAM H. PAULEY III
                                                U.S.D.J.

*Copies Mailed To:*

Mr. John Whitfield
88-A-5197
Woodbourne Correctional Facility
99 Prison Road
P.O. Box 1000
Woodbourne, NY 12788
*Pro Se Plaintiff*

Christina Chinwe Okereke, Esq.
New York State Office of the Attorney General
120 Broadway
New York, NY 10271
*Counsel for State Defendants*

Joseph T. Pareres, Esq.
Rachel Hilary Poritz, Esq.
Silverson, Pareres & Lombardi, L.L.P.
192 Lexington Avenue
17th Floor
New York, NY 10016
*Counsel for Bio-Reference Defendants*